## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILFRED L. HART            :      NO. 3:01CV2330(JCH)

      VS.                   :

EDWARD BLANCHETTE, MD AND   :
OMPRAKASH PILLAI, MD       :      MARCH 30, 2004

### THE DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants move for summary judgment on the plaintiff's amended complaint. The plaintiff, an incarcerated inmate, contends that the defendants were deliberately indifferent to his medical needs, in violation if his rights secured by 42 U.S.C. § 1983. For the reasons set forth below, there are no material issues of fact in dispute concerning the appropriateness of the treatment afforded the plaintiff. In addition, defendant Edward Blanchette had no personal involvement in the treatment decisions at issue. Finally, the defendants are protected by the doctrine of qualified immunity.

## I.    INTRODUCTION

The plaintiff brings this complaint pursuant to 42 U.S.C. § 1983. He alleges that beginning in the "first part of 1998" he repeatedly complained to the defendants Drs. Omprakash Pillai and Edward Blanchette that he had severe pain in his abdominal region and that they were deliberately indifferent to his medical needs. (Amended Complaint, ¶ 5.) He further alleges that the defendants denied him "any treatment" with the exception of over-the-counter doses of Motrin. (Id.)

As will be shown below, the plaintiff's allegations are singularly without merit. First, Dr. Pillai did not start working for the Department of Correction ("DOC")[1] until January 1, 2000, so he could not have ignored the plaintiff's complaints during 1998 and 1999. Second, the medical records do not indicate that the plaintiff complained to Dr. Blanchette at all of his conditions. Third, neither the defendants nor any other DOC physician ever suspected that the plaintiff had cancer during this time period. Fourth, the plaintiff's allegations that the defendants refused to allow treatment other than Motrin and allowed him to suffer from cancer is irresponsible and inaccurate. The medical records indicate that the Dr. Pillai and the DOC medical staff performed numerous tests on the plaintiff, prescribed numerous medications, and worked diligently to discover the cause of his problems. Fortunately for the plaintiff, DOC physicians detected that the plaintiff was suffering from an extremely rare form of cancer, removed the cancer, and the plaintiff is totally asymptomatic.

## II.    FACTS

The plaintiff is an inmate confined to the custody of the Connecticut Department of Correction. At virtually all times relevant to this lawsuit, he has been confined at the Osborn Correctional Institution. (Ex. A.)    Since at least 1998, he had been complaining of gastrointestinal problems. (Defs.' Rule 56(a)(1) St., ¶ 4.) From the time he first complained of these problems until he was diagnosed with carcinoid cancer in late 2000, he was seen by a number of qualified DOC physicians. One such physician was Dr. Monica Farinella, who is

---

[1] Physicians. such as Dr. Pillai, stationed at DOC facilities are generally employed by UCONN Correctional Managed Health Care. For convenience sake, this brief will refer to these physicians as "DOC physicians."

board certified in internal medicine and board eligible in gastrointestinal medicine. As such, she has completed a special two year fellowship exclusively in gastrointestinal medicine and, as such, has functioned as a GI consultant in the past. (Id., ¶ 6.)

In addition, the plaintiff was seen several times by Dr. Omprakash Pillai. Dr. Pillai began his employment with UCONN Correctional Managed Health Care on January 1, 2000 and has been stationed at the Osborn since that time. (Id., ¶ 7.)

Dr. Pillai first met the plaintiff on February 18, 2000. At that time, the plaintiff complained of a worsening acidity symptoms. Dr. Pillai prescribed the plaintiff Tagamet and Maalox. (Id., ¶ 7.) Prior to meeting the plaintiff, Dr. Pillai reviewed the plaintiff's medical record. Based on that review, he would have seen that in June 1998, an upper GI series was performed that was normal. In January 1999, a diagnostic radiological report was performed of the abdomen. This test was also negative. (Id., ¶ 8.) Dr. Pillai suspected, based upon the plaintiff's symptomatology, that he had a peptic ulcer. (Id., ¶ 9.)

Dr. Pillai next met with the plaintiff on May 1, 2000. The plaintiff again complained of chronic diarrhea. Dr. Pillai prescribed a high fiber diet or a fiber supplement. He also ordered stool studies, a full panel of lab work, a stool hemocult study and prescribed Immodium. (Id., ¶ 10.)

On May 30, 2000, the plaintiff again came to see Dr. Pillai. His chart had indicated that his diarrhea had stopped. Dr. Pillai prescribed Kaopectate per the plaintiff's request. (Id., ¶ 11.)

Dr. Pillai next saw the plaintiff on August 10, 2000. The record indicates that the plaintiff complained of chronic diarrhea, nausea and abdominal pain. He further stated that he

3

had felt dizzy and had vomited the day before.  Dr. Pillai developed a plan for the treatment of

the plaintiff's condition.  This plan involved: laboratory work; chemical studies; blood counts;

stool studies; prescribing Tagamet; a lactose free diet due to the possibility of lactose intolerance;

and prescribing Maalox for hyperacidity.  By these tests, Dr. Pillai hoped to determine the

etiology of the patient's chronic gastrointestinal issues.   (Id., ¶ 12.)

On August 11, 2000, Mr. Hart was seen by Dr. Gittzus.  Dr. Gittzus felt a mass in Mr.

Hart's abdomen. (Id., ¶ 14.)

In between the August 10 visit and the August 18 visit, the plaintiff had been seen by

other DOC nurses and physicians.  In addition, the following tests were performed: abdominal x-

ray; IVP; stool hemocult studies; request for CT scan of abdomen; request for UGI/Barium

enema and a request for a gastonenterology consult. (Id., ¶ 15.)

Dr. Pillai next met with the plaintiff on August 18, 2000 in the Osborn infirmary.  The

plaintiff indicated that there were no new medical issues.  At that visit, Dr. Pillai noted that a G.I.

workup and a CT scan were pending. (Id., ¶ 16.)

Dr. Pillai next met with the plaintiff on August 28, 2000.   The plaintiff had been

admitted to the Osborn infirmary on August 26 complaining of epigrastric burning pain.  Dr.

Pillai discharged him back to the general population because his symptoms had subsided.  (Id., ¶

18.) Dr. Pillai met with Mr. Hart on August 30, 2000. (Id., ¶ 19.)

In September 2000, a soft tissue mass was found in Mr. Hart's abdomen.    (Id., ¶ 19.)

On October 16, 2000, an examination of the colon was performed through a barium enema.  The

radiologist found that the colon was normal. (Id., ¶ 20.)

On November 21, 2000, the plaintiff underwent an exploratory laparotomy. It was determined that the plaintiff had a carcinoid cancer of the bowel, with a single mestasis to the liver surface. A carcinoid cancer is a very rare and slow-developing tumor, and is one of the most difficult cancers to detect. (<u>Id.</u>, ¶ 22..)

At the time of the laparotomy, the surgeons removed the entire tumor to the best of their knowledge. The surgery was successful and the cancer has not reappeared to date. The plaintiff is totally asymptomatic from this issue. (<u>Id.</u>, ¶ 21.)

As can be seen by the above recitation of facts, all times Dr. Pillai took the plaintiff's medical complaints seriously and treated them to the best of his ability. He consulted with other DOC physicians concerning the appropriate course of treatment. These physicians were also uncertain concerning the etiology of the plaintiff's problems. (<u>Id.</u>, ¶ 23.)

Dr. Blanchette, who is the clinical director for the DOC, was not involved in the treatment of the plaintiff prior to the detection of the carcinoid cancer. (<u>Id.</u>, ¶ 24.) He was contacted by DOC medical staff after the detection of the cancer. (<u>Id.</u>, ¶ 25.)

## III.    <u>STANDARD OF REVIEW</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). <u>See also, Quarles</u>

v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

## IV.    DISCUSSION

### A.    The Treatment Afforded the Plaintiff was Medically Appropriate and Did not Rise to the Level of Deliberate Indifference

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291 (1976).  Mere negligence will not support a Section 1983 claim.  The conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 203, 232 (S.D.N.Y. 1988 ) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970).  A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Inmates do not have a constitutional right to the treatment of their choice.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  Thus, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The

term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1998) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971).  Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F. Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F. Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F. Supp. 12 (W.D.N.Y. 1982) (bowel problems).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Chance, supra, 143 F.3d at 702.  "An official acts with the requisite deliberate  indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The evidence as set forth above and contained in the affidavits submitted with this case indicate that the defendants were not deliberately indifferent to the plaintiff's medical needs

(which the defendants concede were serious). Indeed, the opposite is the case. The plaintiff presented himself numerous times to DOC physicians, including Dr. Pillai, complaining of stomach and abdominal pain. These physicians were uncertain as to the etiology of the plaintiff's condition. However, they suspected that he had a peptic ulcer. As such they prescribed numerous medications for this suspected condition and performed numerous tests. These included a GI series, a diagnostic radiological report of the abdomen, stool studies, a full panel of lab work and stool hemocult study. If the plaintiff contends that there was a failure to diagnose his condition in a timely fashion, then it is merely a claim for negligence. It is well-established that a claim of negligence is not sufficient to state a claim under 42 U.S.C. § 1983.

In any event, as the defendants' expert Dr. Edward Blanchette has opined, the actions of Dr. Pillai and the other DOC physicians was medically appropriate. Specifically, the tests performed were medically appropriate given the symptomatology. The results of these initial tests did not indicate that a carcinoid cancer or other malignancy was the likely cause of the G.I. symptoms. In addition, the medications prescribed to the plaintiff prior to the detection of the carcinoid cancer were appropriate given that the physicians suspected that he had a peptic ulcer. (Id., ¶¶ 26-27.)

**B.    Defendant Edward Blanchette Had no Personal Involvement in the Treatment of the Plaintiff and Therefore is not a Proper Defendant Under 42 U.S.C. § 1983**

Personal involvement in an alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d

Cir. 1989); Williams v. Smith, 781 F.2d 319 (2d Cir. 1986); Ayers vs. Coughlin, 780 F.2d 205 (2d Cir. 1985); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977); cert. denied, 434 U.S. 1087 (1978). The doctrine of respondeat superior is not applicable to § 1983 cases. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 692-95 (1978).

A supervisory official who has not directly participated in the conduct complained of may be found personally involved in the deprivation of an inmate's right in other ways. For example, he may have failed to remedy the wrong after the violation was brought to his attention through a report or appeal; created, or permitted to continue, the policy or custom pursuant to which the alleged violation occurred; or been grossly negligent in managing officials under his supervision who caused the unlawful incident. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citing, Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

A review of the medical records indicates that Dr. Blanchette had no involvement in this treatment of the plaintiff. He may not be held liable under 42 U.S.C. § 1983 simply because he is the Clinical Director for the provision of medical services by the DOC.

**C.    In the Event That the Court Finds That the Defendants May Have Violated Some Constitutional Right of the Plaintiff, They Should Be Entitled to Qualified Immunity**

The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The Second Circuit has described the circumstances where qualified immunity would apply as follows:

a government official sued in his individual capacity ... is entitled
to qualified immunity in any of three circumstances:  (1) if the
conduct attributed to him is not prohibited by federal law ...; or
(2) where the conduct is so prohibited, if the plaintiff's right not to
be subjected to such conduct by the defendant was not clearly
established at the time of the conduct ...; or (3) if the defendant's
action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the
legal rules that were clearly established at the time it was taken.'
These three issues should be approached in sequence, for if the
second is resolved favorably to the official, the third becomes
moot; a favorable resolution of the first moots both the second and
the third.

X-Men Security, Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999) (citations omitted).

A right is clearly established if a reasonable person in the defendant's position should know that his or her actions violate that right.  The unlawfulness must be apparent.  McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999) (citation omitted).  In other words, a state official should not be forced to have to defend his actions against civil rights challenges unless the state of the law at the time of the alleged conduct gave him "fair warning" that his actions were unlawful.  Hope v. Pelzer, 122 U.S. 1508, 1516 (2002).

In the present case, the plaintiff was seen by numerous DOC physicians.  They performed a large number of tests on the plaintiff and suspected that he had a peptic ulcer.  Dr. Pillai ordered additional tests performed and, along with these physicians, also suspected that the plaintiff had a peptic ulcer.  He was entitled to rely upon their opinion in forming his own treatment plan for the plaintiff.  Likewise, Dr. Blanchette had no notice that anything other than acceptable medical care was being provided to the plaintiff.  They are both entitled to qualified immunity.

## V.     CONCLUSION

For the reasons set forth above, the defendants respectfully urge that their motion for

summary judgment be granted.

DEFENDANTS,
Edward Blanchette, MD and Omprakash Pillai, MD

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY: _____
Neil Parille
Assistant Attorney General
Fed. Bar No. 15278
110 Sherman Street
Hartford, CT  06105
Telephone No.:  (860) 808-5450
Fax No. (860) 808-5591
neil.parille@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid,

this 30th day of March 2004 to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

_____
Neil Parille
Assistant Attorney General