FILED

2004 MAR 31  P 12: 50

STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | |
|---|---|
| WILFRED L. HART | NO. 3:01CV2330(JCH) |
| VS. | |
| EDWARD BLANCHETTE, M.D., AND OMPRAKASH PILLAI, M.D. | MARCH 30, 2004 |

## THE DEFENDANTS' LOCAL RULE 56(A)(1) STATEMENT

The defendants respectfully represent, pursuant to Local Rule 56(a)(1) that the following material facts are not in dispute:

1. Dr. Omprakash Pillai is a physician licensed to practice medicine in the State of Connecticut who is board certified in internal medicine. (Aff. of Pillai at ¶¶ 1 & 3.)

2. Dr. Pillai is employed by UCONN Managed Correctional Health Care. He began his employment on January 1, 2000. (Id. at ¶ 4.)

3. From January 1, 2000 to the present Dr. Pillai ha been stationed at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut. (Id. at ¶ 5.)

4. The plaintiff, an inmate within the custody of the Connecticut Department of Correction ("DOC"), began complaining of gastrointestinal problems since at least 1998. (Aff. of Blanchette, Expert Report at p. 2.)

5. From the time of the plaintiff first complained of gastrointestinal problems until the detection of carcinoid cancer, he was seen by a number of DOC physicians. These physicians suspected that he had a peptic ulcer. (Aff. of Blanchette, Expert Report at p. 2.)

6.  One of the physicians who treated the plaintiff was Dr. Monica Farinella. Dr. Farinella is who is board certified in internal medicine and board eligible in gastrointestinal medicine. As such, she has completed a special two year fellowship exclusively in gastrointestinal medicine and, as such, has functioned as a GI consultant in the past. (Aff. of Blanchette, Expert Report at p. 2.)

7.  Dr. Pillai first met the plaintiff on February 18, 2000. At that time, he complained of a worsening acidity symptoms. Dr. Pillai prescribed the plaintiff Tagamet and Maalox. (Aff. of Pillai at ¶ 7.)

8.  Prior to meeting the plaintiff, Dr. Pillai reviewed the plaintiff's medical record. Based on that review, Dr. Pillai would have seen that in June 1998, an upper GI series was performed that was normal. In January 1999, a diagnostic radiological report was performed of the abdomen. This test was also negative. (Aff. of Pillai at ¶ 8.)

9.  Dr. Pillai suspected, based upon the plaintiff's symptomatology, that he had a peptic ulcer. (Id. at ¶ 9.)

10. Dr. Pillai next met with the plaintiff on May 1, 2000. The plaintiff again complained of chronic diarrhea. Dr. Pillai prescribed a high fiber diet or a fiber supplement. He also ordered stool studies, a full panel of lab work, a stool hemocult study and prescribed Immodium. (Id. at ¶ 10.)

11. On May 30, 2000, the plaintiff again came to see Dr. Pillai. His chart had indicated that his diarrhea had stopped. Dr. Pillai prescribed Kaopectate per the plaintiff's request. (Id. at ¶ 11.)

12. Dr. Pillai next saw the plaintiff on August 10, 2000. The record indicates that the plaintiff complained of chronic diarrhea, nausea and abdominal pain. He further stated that he had felt dizzy and had vomited the day before. Dr. Pillai developed a plan for the treatment of the plaintiff's condition. This plan involved: laboratory work; chemical studies; blood counts; stool studies; prescribing Tagamet; a lactose free diet due to the possibility of lactose intolerance; and prescribing Maalox for hyperacidity. By these tests, Dr. Pillai hoped to determine the etiology of the patient's chronic GI issues. (Id. at ¶ 12.)

13. In determining the appropriate course of action, Dr. Pillai had read the plaintiff's chart which indicated that he was taken to the hospital on August 9. (Id. at ¶ 13.)

14. On August 11, 2000, the plaintiff was seen by Dr. Gittzus. Dr. Gittzus felt a mass in Mr. Hart's abdomen. (Id. at ¶ 14.)

15. In between the August 10 visit and the August 18 visit, the plaintiff had been seen by other DOC nurses and physicians. In addition, the following tests were performed: abdominal x-ray; IVP; stool hemocult studies; request for CT scan of abdomen; request for UGI/Barium enema and a request for a gastonenterology consult. (Id. at ¶ 15.)

16. Dr. Pillai next met with the plaintiff on August 18, 2000 in the Osborn infirmary. The plaintiff indicated that there were no new medical issues. At that visit, Dr. Pillai noted that a GI workup and a CT scan were pending. (Id. at ¶ 16.)

17. Dr. Pillai next met with the plaintiff on August 28, 2000. The plaintiff had been admitted to the Osborn infirmary on August 26 complaining of epigastric burning pain.

Dr. Pillai discharged him back to the general population because his symptoms had subsided. (Id. at ¶ 17.)

18. Dr. Pillai met with the plaintiff on August 30, 2000. (Id. at ¶ 18.)

19. In September 2000, a soft tissue mass was found in the plaintiff's abdomen. (Id. at ¶ 19.)

20. On October 16, 2000, an examination of the colon was performed through a barium enema. The radiologist found that the colon was normal. (Id. at ¶ 20.)

21. On November 21, 2000, the plaintiff underwent an exploratory laparotomy It was determined that the plaintiff had a carcinoid cancer of the bowel, with a single mestasis to the liver surface. At the time of the laparotomy, the surgeons removed the entire tumor to the best of their knowledge. The surgery was successful and the cancer has not reappeared to date. The plaintiff is totally asymptomatic from this issue. (Id. at ¶ 21.)

22. A carcinoid cancer is a very rare and slow-developing tumor. It is one of the most difficult cancers to detect. (Id. at ¶ 22; Aff. of Blanchette, Expert Report at p. 2.)

23. At all times during his treatment of the plaintiff, Dr. Pillai took his medical complaints seriously and treated them to the best of his ability. Dr. Pillai consulted with other DOC physicians concerning the appropriate course of treatment. These physicians were also uncertain concerning the etiology of the plaintiff's problems. (Id. at ¶ 23.)

24. Dr. Blanchette was not involved in the treatment of the plaintiff prior to the detection of the carcinoid cancer. (Aff. of Blanchette at ¶ 6.)

25. Dr. Blanchette was contacted by DOC medical staff after the detection of the carcinoid cancer. (Id. at ¶ 7.)

26. The tests performed on the plaintiff by Dr. Pillai and other DOC physicians were medically appropriate given the symptomatology. (Aff. of Blanchette, Expert Report at p.3.)

27. These results of these initial tests did not indicate that a carcinoid cancer or other malignancy was the likely cause of the G.I. symptoms (Id.)

28. The medications prescribed to the plaintiff prior to the detection of the carcinoid cancer were appropriate given that the physicians suspected that he had a peptic ulcer. (Id.)

DEFENDANTS,
Edward Blanchette, MD and Omprakash Pillai, MD

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Neil Parille
Assistant Attorney General
Fed. Bar No. 15278
110 Sherman Street
Hartford, CT 06105
Telephone No.: (860) 808-5450
Fax No. (860) 808-5591
neil.parille@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 30th day of March, 2004, to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

_____
Neil Parille
Assistant Attorney General