UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILFRED L. HART | : |
| VS. | :   NO. 3:01CV2330(JCH) |
| EDWARD BLANCHETTE, M.D., ET AL. : | APRIL 18, 2004 |

**PLAINTIFF'S LOCAL RULE 56 STATEMENT**

*I*   **RESPONSE TO DEFENDANTS' CLAIMS OF FACT**

1. Agree.

2. Agree.

3. Agree.

4. Agree.

5. Agree with first sentence.  As to second sentence, agree that one of the questions raised was whether there was a peptic ulcer, but otherwise disagree.  (Plaintiff's medical records, pp. 1-40)

6. Agree.

7. Agree.

8. Agree with first sentence.  Otherwise, disagree.  (Plaintiff's medical records, pp. 1-15)

9. Disagree.  (Ibid.)

10. Agree.

11. Agree with first and third sentences. Otherwise, disagree. (Plaintiff's medical records, pp. 1-16)

12. Agree.

13. Agree.

14. Agree.

15. Agree with first sentence. Disagree with second sentence because a "request for" a test is not the performance of a test. In fact, the plaintiff's medical records establish that "requests for tests" were ignored. (Plaintiff's medical records, p. 40)

16. Agree.

17. Agree with first two sentences and with first clause of third sentence. Otherwise, disagree. (Plaintiff's medical records, pp. 31-33)

18. Agree.

19. Agree that the mass was present and noted on that date. Disagree with the claim that it was "found" on that date. (Plaintiff's medical records, pp. 22-23)

20. Disagree. (Plaintiff's medical records, pp. 35-42)

21. Agree.

22. Agree.

23. Disagree. (Plaintiff's medical records, pp. 1-40)

24. Disagree. (Plaintiff's sworn complaint filed December 12, 2001; Blanchette affidavit, ¶ 5; Plaintiff's medical records, pp. 9, 11)

25. Agree.

26. Disagree. (Plaintiff's medical records, pp. 1-42)

27. Disagree. (Plaintiff's medical records, pp. 1-3, 6-8, 13, 18, 22-23, 25, 27-28, 30, 35-39)

28. Disagree. (Plaintiff's medical records, pp. 1-40)

## II    PLAINTIFF'S STATEMENT OF MATERIAL FACTS

1. Despite a clear and documented history of complaints of severe abdominal pain beginning at least as early as 1998, the defendants persisted in refusing to consider the possibility that the plaintiff was suffering from cancer and insisted on treating him as though he were suffering from kidney stones or ulcers, or simply malingering, although in fact he was suffering from cancer which nearly killed him. (Plaintiff's sworn complaint filed December 12, 2001)

2. Plaintiff's blood tests, performed under the supervision of the defendants, consistently were abnormal but that fact was consistently ignored by the defendants. (Ibid.)

3. Even after it became clear that the plaintiff probably was suffering from cancer, the defendants continued to ignore his need for emergency medical treatment and allowed him to continue suffering. (Ibid.)

4. When the plaintiff's cancer finally was diagnosed, he was told he had only a few months to live. (Ibid.)

5. During the period of his suffering, the plaintiff filed repeated medical grievances all of which were ignored by defendant Blanchette. (Ibid.)

6. As early as the first week of May, 1998, the plaintiff's medical records document that he complained of severe and persistent abdominal pain which was not in any way helped by ulcer medication. (Plaintiff's medical records, p. 1)

7. As early as the first week of May, 1998, the plaintiff's medical records document that he alerted defendant Blanchette's medical staff to his concern that he was suffering from abdominal cancer. (Ibid.)

8. As early as the second week of May, 1998, the plaintiff's medical records document that the position of the plaintiff's stomach "does not appear normal" and that there appeared to be "an extrinsic mass" in the abdomen. (Id. p. 2)

9. In June of 1998, the plaintiff's medical records document his continuing complaints of severe and persistent abdominal pain with vomiting and diarrhea and his pleas that he was suffering from an extremely serious ailment. Those records further document that defendant Blanchette's medical staff were conferring about the plaintiff's medical complaints. (Id. p. 3)

10. The plaintiff's medical records document that in June of 1998, the response of defendant Blanchette's staff to the plaintiff's complaints was to refer

to the fact that he was a prisoner as a result of having been convicted of child molestation and the observation that the response to his medical complaints should be a mental health consultation. (Id. p. 4)

11. In January of 1999, the plaintiff's medical records document his continued complaints of severe abdominal pain and vomiting, the ineffectiveness of the anti-ulcer medications being given him, his pleas to be hospitalized and that the response of defendant Blanchette's staff was to order him back to his cell. (Id. p. 5)

12. In February of 1999, the plaintiff's medical records document that a radiological examination of the plaintiff's abdomen, coupled with his medical history, "raises concern for a mass." (Id. p. 6)

13. The response of defendant Blanchette's staff was that if a single flat plate x-ray of the plaintiff's abdomen did not conclusively establish the existence of a mass, they would conduct no further examinations and continue the plaintiff on the anti-ulcer medication which the medical chart already established was ineffective. (Id. p. 7)

14. Defendant Blanchette was personally advised of the plaintiff's ongoing condition and medical problems at least as early as August 23, 1999. (Id. pp. 9, 11)

15. On that same day, the plaintiff's medical records documented that he continued to suffer from severe abdominal pain with vomiting and diarrhea and

that an increased dosage of the anti-ulcer medication had no effect upon his symptoms. (Id. pp. 10-12)

16. Dr. Blanchette was notified personally on August 23, 1999, that the plaintiff's abdominal pain was so severe that he had to be transported throughout the state in a desperate search for an available hospital bed. (Id. p. 11)

17. Despite these grave medical conditions, and the fact that the plaintiff at the time was seventy (70) years old, he was kept in a prison cell rather than in a hospital bed, a fact documented in his medical records. (Id. p. 13)

18. The plaintiff's excruciating pain, vomiting and diarrhea continued unabated as weeks became months of documented suffering. (Ibid.)

19. The plaintiff repeatedly told medical staff that he knew he was suffering from cancer of the stomach and that fact was documented in his medical records. (Ibid.)

20. The plaintiff's agonies continued unabated into the year 2000, a fact documented in his medical records. (Id. p. 15)

21. Defendant Pillai documented in the plaintiff's medical records on his very first visit with him that his symptoms went well beyond those of peptic ulcer and included "chronic diarrhea" over a period of years. (Id. p. 16)

22. In the summer of 2000, the plaintiff was documented to be "doubled over with abdominal pain" and crying out that "I cannot take it no more." (Id. p. 17)

23. By August 1, 2000, the plaintiff's medical records document that he was literally "crying" from the agony of his abdominal pain and was "very weak". (Ibid.)

24. On August 14, 2000, the plaintiff's medical records documented that he had a "long history of...cancer, blockage, vomiting, diarrhea." (Id. pp. 18, 25)

25. On August 9, 2000, the plaintiff's medical records document that he was found lying on his side on the floor of his cell, complaining of abdominal pain and vomiting. He was taken to the medical unit of his prison by stretcher. (Id. pp. 19-20)

26. The plaintiff remained in the hospital unit until August 21, 2000. (Id. p. 21)

27. While on the hospital unit, on August 11, 2000, the plaintiff's medical records again documented the presence of an abdominal mass above and to the right of his navel. (Id. p. 22)

28. The plaintiff's medical records document that on August 11, 2000, the abdominal mass from which the plaintiff suffered was tentatively diagnosed as colon cancer. (Ibid.)

29. Based upon the plaintiff's documented history of more than two years of unremitting agony, the documentation of an abdominal mass, and the conclusion of the examining physician that the mass was colon cancer, a "Utilization Review Request" for an abdominal CT scan was submitted to

defendant Blanchette on August 11, 2000. It was not marked "urgent". (Id. p. 23)

30. It was eleven (11) days before defendant Blanchette's Utilization Review Committee approved an abdominal CT scan for the plaintiff. (Id. p. 28)

31. Meanwhile, as the days wore on, the plaintiff continued vomiting a "green liquid" in his hospital unit bed and producing bloody stool. (Id. pp. 24, 26)

32. Defendant Pillai, however, continued to look for kidney stones. (Id. p. 27)

33. Defendant Pillai discharged the plaintiff back into the general prison population one day before the abdominal CT scan had been authorized. (Id. p. 29)

34. Days later, the plaintiff was back in the prison hospital unit, unable to walk unassisted, with "severe epigastric 'burning all night long,'...vomiting + diarrhea...." He had not eaten in four (4) days and was pale. (Id. p. 31)

35. Two days later, defendant Pillai again discharged the plaintiff back into the general prison population. The abdominal CT scan still had not been conducted. (Id. p. 33)

36. On September 8, 2000, the block officer called the medical unit to report his concerns that the plaintiff was suffering from abdominal pain. Because he was not vomiting at that time, he was sent back to his cell. (Id. p. 34)

37. Meanwhile, on September 7, 2000, the plaintiff at last received his abdominal CT scan at the John Dempsey Hospital. The CT scan was read that very day. It showed a "3.2 cm x 5.0 cm x 4.4 cm soft tissue mass in the right side of the abdomen at the level of approximately L2. This density is adherent to several loops of small bowel and the mesenteric fat is 'dirty' immediately next to it. This density most likely represents a neoplastic process originating from the mesentery versus small bowel." In other words, colon cancer. (Id. pp. 35-36)

38. That report was not read and initialed by defendant Pillai for more than a week – on September 15, 2000. (Id. p. 37)

39. Meanwhile, the plaintiff continued to suffer and his sufferings were at times mocked by medical staff, scoffing at his claims of weight loss, for example. (Id. p. 34)

40. The day that defendant Pillai finally got around to reading and initialing the report of the results of the plaintiff's abdominal CT scan, defendant Blanchette's Utilization Review Committee approved a "surgical consult" for the plaintiff. (Id. p. 38)

41. That authorization by defendant Blanchette's committee, however, could not go into effect without the approval of defendant Pillai. Defendant Pillai did not bother to sign off on it until late September, 2000, almost two weeks later during which time the plaintiff continued to suffer. (Ibid.)

42. The surgeon at the University of Connecticut Health Center immediately concluded that the plaintiff's abdominal pain and diarrhea was "probably related" to his cancer. (Id. p. 39)

43. Despite the fact that all the foregoing events had taken place before the end of September, 2000, and defendant Blanchette's admission that he was personally involved during that period, the plaintiff was left to suffer in his cell throughout the entire month of October, 2000, and most of the month of November. (Id. p. 40)

44. The plaintiff was not taken for surgery until November 21, 2000. The cancer was immediately located and removed that day by Dr. David L. Giles. (Id. pp. 41-42)

THE PLAINTIFF

BY_____
    JOHN R. WILLIAMS (ct00215)
    51 Elm Street
    New Haven, CT 06510
    (203) 562-9931
    FAX: (203) 776-9494
    E-Mail: jrw@johnrwilliams.com
    His Attorney

CERTIFICATION OF SERVICE

On the date above stated, a copy hereof was mailed to Neil D. Parille, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105.

_____
JOHN R. WILLIAMS