UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILFRED L. HART | : | CASE NO. 3:01CV2330(JCH) |
| VS. | : | |
| EDWARD BLANCHETTE, M.D. AND | : | |
| OMPRAKASH PILLAI, M.D. | : | MAY 7, 2004 |

**THE DEFENDANTS' SUPPLEMENTAL LOCAL RULE 56(A)(1) STATEMENT**

The defendants submit this supplemental Local Rule 56(a)(1) statement in support of their motion for summary judgment.

1. In January 1999, Mr. Hart's medical records indicate that it was suspected that he had a mass in his abdomen. Tests were performed which were negative. (Aff. of Pillai, dated May 7, 2004, Ex. A).

2. Non-emergency requests for surgical consultations and surgery must be approved by the Utilization Review Committee ("URC"). Surgery is almost always performed on Department of Correction ("DOC") inmates at the University of Connecticut Health Center in Farmington. (Aff. of Cheryl Malcolm, ¶ 6.)

3. During the period of August through November 2000, the members of the URC were Dr. Edward Pesanti, Rosemary Grella RN/URNC, Denise Sullivan RN/URNC and Cheryl Malcolm RN/Operational Administrator. (Id., ¶ 7.)

4. Dr. Edward Blanchette is employed by the DOC. He was not a member of the URC and did not supervise it during the period of August through November 2000. (Id., ¶ 8.)

1

5. Because inmates have to be transferred to the University of Connecticut Health Center for surgery, there are security and transportation concerns that are not present for patients who are not incarcerated. For this reason, non-emergency surgery may not be performed on inmates as quickly as on non-incarcerated patients. (Id., ¶ 9.)

6. When the URC approves surgery, that approval is sent to the surgeon. The surgeon schedules the surgery himself, within any parameters set by the URC. (Id., ¶ 10.)

7. When the URC issues a determination/recommendation, the document has a portion on the bottom which states "URC Decision To Be Reviewed by Facility-Based MD Before Filing." This is to ensure that a doctor at the inmate's facility reviews the document to know what has been ordered or recommended by the URC. It does not mean that the decision requires the approval of a facility physician to go into effect. (Id., ¶ 12.)

8. On August 11, 2000, Dr. John Gittzus felt a mass in Mr. Hart's abdomen. (Aff. of Pillai, dated May 5, 2004, ¶ 6.)

9. On August 11, 2000, Dr. Gittzus requested a CT scan on Mr. Hart's abdomen. (Id, ¶ 7.)

10. On August 22, 2000, the URC approved the request for the CT scan. (Id., ¶ 8.)

11. On September 7, 2000, a CT scan was performed on Mr. Hart's abdomen. (Id., ¶ 9.)

12. The Diagnostic Radiological Report, which indicates the results of this test, was typed by Dr. Mark Kane on September 12. This Report indicates that it was faxed to Osborn on September 13, 2000. This Report states that Mr. Hart "most likely" had a "neoplastic process originating from the mesentery process." A "neoplastic process" is cancer. (Id., ¶ 10.)

13. On September 15, 2000, Dr. Pillai requested a surgical consult for Mr. Hart based on the Radiological Report. (Id., ¶ 11.)

14. On September 15, 2000, the URC approved a surgical consultation for Mr. Hart. (Id., ¶ 12.).

15. On September 27, 2000, Dr. David Giles performed a surgical consultation. He concluded that Mr. Hart should have an exploratory laparotomy to determine if he had colon cancer. (Id., ¶ 13.)

16. On October 4, 2000, the URC approved surgery. (Id., ¶ 14.) The URC directed that the surgery take place on or after October 12, 2000. (Aff. of Cheryl Malcolm, ¶ 19.)

17. On November 21, 2000, Dr. Giles performed surgery on Mr. Hart. Dr. Giles found that Mr. Hart had a carcinoid cancer of the bowel, with a single mestasis to the liver surface. (Aff. of Pillai., ¶ 15.)

18. From the time that Dr. Gittzus detected a mass in Mr. Hart in August 2000 until the surgery indicated that Mr. Hart had colon cancer on November 21, 2000, it was necessary to rule out other causes of Mr. Hart's symptoms. (Id., ¶ 16.)

19. For this reason, on September 15, 2000, Dr. Pillai submitted a URC request to have a GI consult and a barium enema. (Id., ¶ 17.)

20. Because Dr. Pillai is not a surgeon, he was not consulted by the URC or Dr. Giles concerning the scheduling for the surgery. (Id., ¶ 18; Aff of Malcom, ¶ 19.)

21. A review of the records indicates that the URC and Dr. Giles decided to perform the surgery on a non-emergency basis. (Aff. of Pillai, ¶ 19.)

22. Dr. Pillai had no role in the decision to perform the surgery on a non-emergency basis. (Aff. of Pillai, ¶  ; Aff. of Malcom, ¶ 19.)

23. Surgery to remove a cancerous mass such as that which was suspected in Mr. Hart's case would normally be done on a non-emergency basis. (Aff. of Pillai, ¶ 19.)

24. Dr. Pillai treated Mr. Hart's symptoms as necessary prior to the surgery. (Id., ¶ 19.)

25. For example, during the period from August through November 2000, Dr Pillai prescribed various medications including Tagamet, Reglan, Bentyl and Tylenol to control Mr. Hart's gastrointestinal symptoms. (Id., ¶ 20.)

        DEFENDANTS,
        Edward Blanchette, MD and
        Omprakash Pillai, MD

        RICHARD BLUMENTHAL
        ATTORNEY GENERAL

BY: __/s/_____
    Neil Parille
    Assistant Attorney General
    Fed. Bar No. 15278
    110 Sherman Street
    Hartford, CT  06105
    Telephone No.: (860) 808-5450
    Fax No. (860) 808-5591
    E-mail: neil.parille@po.state.ct.us

**CERTIFICATION**

      I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, this 7th May of May, 2004, to:

John R. Williams, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06510

                                           /s/_____
                                           Neil Parille
                                           Assistant Attorney General