UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILFRED L. HART                    :
                                   :
vs.                                :    Civ. No. 3:01CV2330 (JCH)
                                   :
EDWARD BLANCHETTE, M.D. and        :
OMPRAKASH PILLAI, M.D.             :

RECOMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff, a prisoner at the Osborn Correctional Institution ("Osborn"), brings this civil rights action pursuant to 42 U.S.C. §§1983 and 1988, against two current employees of the Connecticut Department of Corrections ("DOC").  Plaintiff alleges that defendants' deliberate indifference to his serious medical needs violated rights guaranteed by the Eighth Amendment to the U.S. Constitution.[1]

For the reasons that follow, defendants' Motion for Summary Judgment **[Doc. #28]** is **GRANTED.**


STANDARD OF LAW

Summary judgment is appropriate when there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law.  See D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257-58

---

[1] Defendants are sued solely in their individual capacities for compensatory damages, punitive damages, attorney fees and costs.

(1986).  Therefore, to defeat summary judgment, evidence must be presented upon which a jury could reasonably find for the non-movant.  <u>Anderson</u>, 477 U.S. at 252.

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  <u>Soto v. Meachum</u>, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not create a genuine issue of material fact by merely presenting unsupported statements.  <u>See</u> <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995); <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978).  Conclusory allegations or unsubstantiated speculation on the part of the non-movant is insufficient to defeat summary judgment.  <u>D'Amico</u>, 132 F.3d at 149.  Therefore, "the non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts or defeat the motion through mere speculation or conjecture."  <u>Western World Insurance Co. v. Stack Oil</u>, Inc. 922 F.2d 118, 121 (2d Cir. 1990)(citing <u>Knight v. U.S. Fire Insurance Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986)); <u>see</u> <u>also</u> Fᴇᴅ. R. Cɪᴠ. P. 56(e); <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that a party may not rely on conclusory statements or an argument that the affidavits in support of the

motion for summary judgment are not credible).  Instead, to defeat summary judgment the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists.  See Wright v. Coughlin, 132 F.3d 133, 137 (2d. Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

FACTS

   Based on defendants' D. Conn. L. Civ. R Local Rule 56(a)(1) Statement and exhibits and Hart's D. Conn. L. Civ. R. Local Rule 56(a)(2) Statement and exhibits, the following facts are undisputed.

1. Defendant Dr. Edward Blanchette is a physician licensed to practice medicine in the State of Connecticut and board certified in internal medicine and infectious disease.  [Doc. #28, Ex. C, ¶1, ¶3].

2. From 1984 to the present, Dr. Blanchette has been employed by the Connecticut Department of Correction ("DOC").  Id. at ¶4.

3. Currently, Dr. Blanchette is the Clinical Director of the Connecticut DOC.  Id. at ¶5.

4. Dr. Omprakash Pillai is a physician licensed to practice medicine in the State of Connecticut and board certified in internal medicine.  [Doc. #29 at ¶1].

5.  From January 1, 2000 to the present, Dr. Pillai has been
    employed by the UCONN Managed Correctional Health Care. Id.
    at ¶2.

6.  From January 1, 2000 to the present, Dr. Pillai has been
    stationed at Osborn Correctional Institution ("Osborn") in
    Somers, Connecticut. Id. at ¶3.

7.  At Osborn, non-emergency requests for surgical consultations,
    CT scans, and surgery must be approved by the Utilization
    Review Committee ("URC"). [Doc. #34, Attach. A at ¶16]. Dr.
    Blanchette was neither a member of the URC, nor its
    supervisor. Id. at ¶8.

8.  At Osborn, a treating physician such as Dr. Pillai is not
    responsible for scheduling surgical procedures when the
    surgical consult is done by another doctor. [2] [Doc. #34,
    Attach. A at ¶10, ¶19; Id., Attach. B at ¶¶ 18-19].

9.  Plaintiff, Mr. Hart, is an inmate committed to the custody of
    the DOC. [Doc. #29 at ¶4].

_____

[2] The Court notes that plaintiff disputes this characterization of
prison procedure.  However, plaintiff offers no contravening
evidence other than the allegations made in his amended complaint
and statements made in his Statement of Material Facts.
Plaintiff may not rest on "unsupported assertions" contained in
his pleadings. Goenaga, 51 F.3d at 18. See also McCloud v.
Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988)(summary judgment
appropriate when motion is supported by affidavits proving facts
that entitle movant to dismissal and non-movant failed to produce
evidence disproving said facts).

10. Plaintiff has complained of gastrointestinal problems since at least 1998.  Id.

11. From the time plaintiff first complained of gastrointestinal problems until the detection of carcinoid cancer, he was seen by multiple DOC physicians.  Id. at ¶5.

12. One of the physicians who treated plaintiff was Dr. Monica Farinella.  Dr. Farinella is board certified in internal medicine and board eligible in gastrointestinal medicine.  As such, she has completed a special two year fellowship exclusively in gastrointestinal medicine and has functioned as a GI consultant in the past.  Id. at ¶6.

13. Mr. Hart's medical records during the time period covered by this lawsuit reflect the medical treatment set out in paragraphs 14 through 49, below.

14. May 7, 1998.  Plaintiff complained to the medical staff that "I think I have cancer."  This statement was recorded on his medical chart. [Doc. #30, Ex. B at 1].

15. May 13, 1998.  A Diagnostic Radiologic Report prepared by Dr. Monica Farinella regarding an upper GI examination of plaintiff stated that, although the position of plaintiff's stomach did not appear to be normal, the reason for the abnormality could not be determined from the tests performed. Thus, she recommended that a radiologist perform an upper GI. Id. at 2.

16. June 16, 1998 – January 13, 1999.  Plaintiff was seen by medical staff on seven different occasions for symptoms such as abdominal pain, vomiting, diarrhea, heartburn, ulcer, hernia and weight loss.  Id. at 1-5.

17. June 19, 1998.  Plaintiff discussed the circumstances surrounding his conviction for child molestation with the medical staff.  Id. at 4.

18. January 27, 1999.  A Diagnostic Radiologic Report issued by Dr. Gale Ramsby indicated that a flat plate examination of plaintiff's abdomen appeared normal.  However, she did not exclude the possibility that a mass existed in plaintiff's abdomen.  Id. at 6.

19. August 23, 1999.  Dr. Blanchette was notified that plaintiff was to be hospitalized for medical observation and evaluation.  Id. at 9.

20. September 7, 1999.  Plaintiff's statement that "I have cancer don't I, I am going to die" recorded on his medical chart.  Id. at 13.

21. February 18, 2000.  Dr. Pillai first met plaintiff, who complained of worsening acidity symptoms.  Dr. Pillai prescribed plaintiff Tagamet and Maalox.  [Doc. #29 at ¶7].  The record states that, prior to meeting plaintiff, Dr. Pillai reviewed plaintiff's medical records.  Id. at ¶8.

22. April 24, 2000.  Plaintiff reported that he had had diarrhea for over a week as well as abdominal cramps.  After registering this complaint, he was given Cipro and Kaolin.[3] [Doc. #30, Ex. B at 15].

23. May 1, 2000.  Plaintiff met with Dr. Pillai and complained of chronic diarrhea.  Dr. Pillai prescribed a high fiber diet or a fiber supplement.  He also ordered stool studies, a full panel of lab work and a stool hemocult study and prescribed Immodium.  [Doc. #29 at ¶10].

24. May 17, 2000.  Plaintiff stated that his diarrhea had stopped. [Doc. #30, Ex. B at 16].

25. May 30, 2000.  Plaintiff was seen by Dr. Pillai.  At the request of plaintiff, Dr. Pillai prescribed Kaopectate. [Doc. #29 at ¶11].

26. July 29, 2000.  Plaintiff complained that "I cannot take it no more.  I [have been] having loose stools for three weeks." [Doc. #30, Ex. B at 17].

27. August 1, 2000.  Plaintiff was picked up from E Block because he was "very weak" and "doubled over in abdominal pain."  Id.

28. August 9, 2000.  Plaintiff found lying on the floor complaining of abdominal pain that "comes and goes."

---

[3] The medical record states that plaintiff was given "Cepro" and "Keolin."  Because both Cipro and Kaolin are used to treat diarrhea, the Court assumes that the medical chart author misspelled the medications administered to Mr. Hart.

Plaintiff was placed in a stretcher and taken to hospital. <u>Id.</u> at 19.

29. August 10, 2000.  Dr. Pillai saw plaintiff, who complained of chronic diarrhea, nausea, and abdominal pain.  Plaintiff also relayed to Dr. Pillai that the day before he had felt dizzy and vomited.  Dr. Pillai developed a plan designed to determine the etiology of plaintiff's chronic GI issues. This plan included laboratory work, chemical studies, blood counts, stool studies.  It also included prescribing Maalox for hyperacidity, Tagamet, and a lactose free diet due to the possibility of lactose intolerance.  [Doc. #29 at ¶12]. Before creating this plan, Dr. Pillai reviewed plaintiff's chart which indicated that he was taken to the hospital on August 9, 2000.  <u>Id.</u> at ¶13.

30. August 11, 2000.  Plaintiff was seen by Dr. Gittzus, who felt a mass in plaintiff's abdomen.  <u>Id.</u> at ¶14.  Notation by Dr. Gittzus indicates that he thought colon cancer was a possibility.  [Doc. #30, Ex. B at 22].  Dr. Gittzus requested that an abdominal CT scan be done on plaintiff on a non-emergency basis.  <u>Id.</u> at 23.

31. August 11, 2000 - August 17, 2000.  Plaintiff was seen by DOC nurses and physicians other than Dr. Pillai.  During this timeframe, the following tests were performed: abdominal x-rays; IVP; and stool hemocult studies.  [Doc. #29 at ¶15].

32. August 15, 2000.  Plaintiff complained of nausea.  [Doc. #30,
    Ex. B at 24].

33. August 16, 2000.  Plaintiff denied that he was experiencing
    any abdominal pain.  Id. at 24.  Plaintiff was "resting
    comfortably."  Id. at 26.  Dr. Pillai submitted a request for
    a UGI Series and barium enema to be performed on plaintiff.
    [Doc. 34, Ex. C].

34. August 17, 2000.  Plaintiff reported that he was not
    experiencing diarrhea.  [Doc. #30, Ex. B at 26].

35. August 18, 2000.  Plaintiff was seen by Dr. Pillai in the
    Osborn infirmary.  Plaintiff indicated that there were no new
    medical issues.  Dr. Pillai noted that a GI workup and a CT
    scan were pending.  [Doc. #29 at ¶16].

36. August 21, 2000.  Plaintiff was discharged from the hospital.
    He was prescribed Tagamet, Bentyl, and Metamucil.  [Doc. #30,
    Ex. B at 21].

37. August 22, 2000.  The URC approved Dr. Gittzus' request for a
    CT scan.  Dr. Pillai reviewed and signed the URC's approval.
    Id. at 28.

38. August 26, 2000.  Plaintiff was admitted to the Osborn
    infirmary complaining of epigastric burning pain.  [Doc. #29
    at ¶17].  He also complained of vomiting and diarrhea.  [Doc.
    #30, Ex. B at 31].

39. August 27, 2000.  Plaintiff reported that his pain had
    improved greatly and no longer complained of burning.  Id. at
    32.

40. August 28, 2000.  Dr. Pillai saw plaintiff and discharged him
    back to the general population.  [Doc. #29 at ¶17].

41. August 30, 2000.  Dr. Pillai met with plaintiff.  Id. at ¶18.

42. September 7, 2000.  CT scan performed on plaintiff.
    Diagnostic Report issued by Dr. Mark Kane indicated that
    plaintiff's abdomen contained a soft tissue mass.  In his
    report, typed on September 12, Dr. Kane speculated that the
    mass "most likely represents a neoplastic process originating
    from the mesentery versus small bowel."  [Doc. #30, Ex. B at
    35].

43. September 8, 2000.  Block officer reported that plaintiff was
    complaining of abdominal pain.  Plaintiff was not vomiting
    and later reported that he was feeling better.  He was
    returned to housing.  Id. at 34.

44. September 15, 2000.  Dr. Pillai requested a surgical consult
    for plaintiff.  [Doc. #34, Ex. C].  The URC recommended a
    surgical consult for plaintiff. [Doc. #30, Ex. B at 38].  Dr.
    Pillai initialed Dr. Kane's report.  Id. at 37.

45. September 25, 2000.  Dr. Pillai reviewed the URC's
    recommendation for a surgical consult for Mr. Hart.  Id. at
    38.

46. September 27, 2000.  Dr. David Giles examined plaintiff.  Dr. Giles' report explained that he believed the mass in plaintiff's right side was "probably related to [the] diarrhea and abdominal pain" plaintiff was experiencing.  <u>Id.</u> at 39.

47. October 16, 2000.  A barium enema examination of plaintiff's colon was performed by Dr. S.L. Cramer.  The report produced by Dr. Cramer indicated that plaintiff's colon was normal. [Doc. #34, Ex. H].

48. November 3, 2000.  Plaintiff complained of diarrhea and abdominal pain.  [Doc. #30, Ex. B at 40].

49. November 21, 2000.  Plaintiff underwent an exploratory laparotomy performed by Dr. Giles.  The procedure determined that plaintiff had a carcinoid cancer of the bowel, with a single mastitis to the liver surface.  At the time of the laparotomy, the surgeons removed the entire tumor to the best of their knowledge.  The surgery was successful.  The cancer has not reappeared to date and plaintiff is totally asymptomatic.  [Doc. #29 at ¶21]; [Doc. #30, Ex. B at 41-42].

50. A carcinoid cancer is a very rare and slow-developing tumor. It is one of the most difficult cancers to detect.  [Doc. #29 at ¶22].

42 U.S.C. §1983

To state a cause of action under 42 U.S.C. §1983, a plaintiff must show: 1) the conduct in question was committed by a person acting under color of state law; 2) that the conduct deprived plaintiff of a right or privilege secured by the Constitution and the laws of the United States.  West v. Atkins, 487 U.S. 42, 48 (1988); Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1984).

### Color of Law

Plaintiff successfully fulfills the first requirement for stating a claim under §1983.  A plaintiff may demonstrate that defendants acted under color of state law by making two showings: first, the actor was employed by the state and second, the conduct in question occurred while the state employee was performing his official responsibilities.  See West v. Atkins, 487 U.S. at 49-50 (1988).  For purposes of a 42 U.S.C. §1983 claim, it is irrelevant whether defendants were acting in accordance with or contrary to state law.  See Monroe v. Pape, 365 U.S. 167 (1961), rev'd on other grounds, Monroe v. Department of Social Services., 436 U.S. 658 (1978).  Because the record indicates that Dr. Pillai and Dr. Blanchette were performing their duties as employees of the State of Connecticut when plaintiff's alleged injuries occurred, the first element of a §1983 claim is established.  See Doc. #15 at ¶3; Doc. #16 at ¶3.

<u>Deprivation of Constitutional Right</u>

Plaintiff is unable to produce evidence that defendants deprived plaintiff of any right, privilege, or immunity secured by the Constitution or the laws of the United States.  Plaintiff alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.  To successfully make such a claim, an incarcerated plaintiff must demonstrate that defendants were deliberately indifferent to plaintiff's serious medical need.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).

The test for deliberate indifference is two pronged. <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  To satisfy the objective prong, the alleged deprivation must be sufficiently serious.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  <u>See</u> <u>Hathaway</u>, 37 F.3d at 66 ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration or extreme pain") (quoting <u>Nance v. Kelly</u>, 912 F.2d 605, 607 (2d Cir. 1990)(Pratt, J., dissenting)); <u>see, e.g.</u>, <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989)(brain tumor); <u>Hathaway v. Coughlin</u>, 841 F.2d 48 (2d Cir. 1988)(broken pins in hip); <u>Williams v. Vincent</u>, 508 F.2d 541 (2d Cir. 1974) (doctor discarded inmate's ear and stitched stump rather than attempting to reattach ear).

Meanwhile, the subjective prong requires that plaintiff demonstrate that defendants acted with a sufficiently culpable

state of mind.  Hathaway, 37 F.3d at 66 (citing Wilson, 501 U.S.

at 298).  To satisfy the subjective component, the inmate must

show that the prison doctors "had a 'wanton' state of mind when

they were engaging in the alleged misconduct."  Davidson v.

Flynn, 32 F.3d 27, 30 (2d Cir. 1994).  Stated differently, "the

required state of mind . . . is that the official 'knows of and

disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists,

and must also draw the inference.'"  Hemmings v. Gorczyk, 134 F.3d

104, 108 (2d Cir. 1998)(quoting Farmer v. Brennan, 511 U.S. 825,

837 (1994)).

   A. The Evidence in the Record Satisfies the Objective Prong of
      the Deliberate Indifference Test.

   To succeed in a cause of action where plaintiff

alleges that he has been deprived of his Eighth Amendment right

in the context of the medical treatment he received as a

prisoner, he must demonstrate that he suffered more than a minor

injury or discomfort.  See Sonds v. Barnabas Hosp. Correctional

Health Servs., No. 00 Civ. 4968, 2001 WL 664402 (S.D.N.Y. May 21,

2001)("cut finger, even where skin is 'ripped off,'. . .does not,

as a matter of law, qualify as an injury severe enough to justify

civil rights relief"); Veloz v. New York, 35 F. Supp. 305, 312

(S.D.N.Y. 1999)(foot condition involving a fracture fragment,

bone cyst and degenerative arthritis not sufficiently serious).
Plaintiff must show that he experienced a large amount of pain
for more than a brief period of time.  See Chance v. Armstrong,
143 F.3d 698, 702 (2d Cir. 1998) (claims of a plaintiff who, as a
result of abscessed teeth, experienced "great pain for at least
six months,. . .was unable to chew properly, and choked on his
food" met "sufficiently serious" threshold); Hathaway, 37 F.3d at
67 (hip condition that produced such "great pain" that it caused
plaintiff to have difficulty walking and register approximately
seventy complaints over a three year span constituted
sufficiently serious medical needs).

     Plaintiff's alleged injuries were sufficiently severe to
warrant protection under the Eighth Amendment protection against
deliberate indifference.  Plaintiff's medical records show that
he experienced severe pain intermittently for at least two years.
[Doc. #30, Ex. B].  Although Dr. Pillai was plaintiff's treating
physician for less than half of that time (approximately ten
months), he was aware of plaintiff's prior bouts with extreme
abdominal pain when he began his treatment of Mr. Hart.  [Doc.
#29 at ¶8].  Moreover, under Chance, merely six months of "great
pain" constitutes a sufficiently serious injury.  Chance, 143
F.3d at 702-03.

B. The Evidence in the Record Does Not Satisfy the Subjective
   Prong of the Deliberate Indifference Test.

The subjective prong of the deliberate indifference test
requires that a defendant be cognizant of an excessive risk to
the health of an inmate, and consciously disregard that risk.
Id. at 703; Hemmings, 134 F.3d at 108. He "must both be aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw that
inference." Id.; Hathaway v. Coughlin, 37 F.3d 63 at 66.
Therefore, "a complaint that a physician has been negligent in
diagnosing or treating a medical condition does not state a valid
claim of medical mistreatment under the Eighth Amendment."
Estelle v. Gamble, 429 U.S. at 106.

However, the threshold for deliberate indifference is below
purposeful infliction of physical harm. Hathaway, 37 F.3d at 66.
Although "mere medical malpractice is not tantamount to
deliberate indifference, certain instances of medical malpractice
may rise to the level of deliberate indifference; namely, when
the malpractice involves . . . an act or failure to act by a
prison doctor that evinces a conscious disregard of a substantial
risk of serious harm." Chance, 143 F.3d at 703. (quoting
Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). Thus,
the state of mind required for deliberate indifference is best

likened to criminal recklessness.  Hathaway, 99 F.3d at 553;

Hemmings, 134 F.3d at 108.

> A difference of opinion between a prisoner and prison
> officials regarding medical treatment does not, as a
> matter of law, constitute deliberate indifference.
> Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998);
> United States ex rel. Hyde v. McGinnis,  429 F.2d 864,
> 867 (2d Cir. 1970)(citing Coppinger v. Townsend, 398
> F.2d 392, 394 (10th Cir. 1968); McCloud v. Delaney, 677
> F. Supp. 230, 232 (S.D.N.Y. 1988) ("[t]here is no right
> to the medical treatment of one's choice. . .").  Nor
> does the fact that an inmate might prefer an
> alternative treatment, or feels that he did not get the
> level of medical attention he preferred. Dean v.
> Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  As long as
> the medical care is adequate, there is no Eighth
> Amendment violation.  Wandell v. Koenigsmann, No. Civ.
> A. 99-8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27,
> 2000).
>
> Indeed, prison officials and medical officers have wide
> discretion in treating prisoners, and Section 1983 is
> not designed to permit federal courts to interfere in
> the ordinary medical practices of state prisons.
> Church v. Hegstrom, 416 F. 2d 449, 450-451 (2d Cir.
> 1969).  Federal courts are generally hesitant to second
> guess medical judgments and to constitutionalize claims
> which sound in state tort law.  Dean v. Coughlin, 804
> F.2d 207, 215 (2d Cir. 1986) ("The Constitution does
> not command that inmates  be given medical attention
> that judges wish to have for themselves.")  So strong
> is this view that determinations of medical providers
> concerning the care and safety of patients are given a
> "presumption of correctness."  Perez v. The County of
> Westchester, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000)
> (citing Kulak v. City of New York, 88 F.3d 63, 77 (2d
> Cir. 1996)).

Sonds v. St. Barnabas Hospital Correctional Health Services, 151

F. Supp. 2d 203, 311 (S.D.N.Y. 2001).

   To defeat a motion for summary judgment, plaintiff may

demonstrate the doctor's conscious disregard of a substantial

risk by presenting evidence that defendant withheld information
from plaintiff that may have altered plaintiff's choice regarding
his treatment or failed to take plaintiff's condition seriously.
See Hathaway 37 F.2d at 67, 68.  Plaintiff can also demonstrate a
defendant's conscious disregard of a substantial risk by
presenting evidence indicating defendant's actions were a product
not of genuine medical evaluation, but of "ulterior motives."
Chance, 143 F.3d at 704.

    1. The Liability of Dr. Pillai

    Dr. Pillai was plaintiff's treating physician at Osborn
from February 18 to November 21, 2000, when the cancerous mass
was removed from plaintiff's abdomen.  Plaintiff alleges that Dr.
Pillai, upon reading plaintiff's medical chart before meeting
him, "clearly knew that . . . plaintiff probably had cancer."
[Doc. #30 at 2].  Plaintiff asserts that Dr. Pillai then
demonstrated deliberate indifference to plaintiff's medical
condition by failing to treat him for cancer for over nine
months.  However, plaintiff fails to present any evidence that
supports his claim that Dr. Pillai demonstrated deliberate
indifference toward the medical wellbeing of plaintiff.

    Plaintiff first argues that Dr. Pillai must have known from
the medical chart that Mr. Hart had cancer, and therefore the
doctor's subsequent treatment for non-cancer related problems
demonstrated deliberate indifference to plaintiff's medical

condition.  Plaintiff must demonstrate that Dr. Pillai had actual knowledge of plaintiff's condition because, unless Dr. Pillai deliberately chose not to treat plaintiff for a condition he knew plaintiff had, plaintiff's Eighth Amendment claim would fail. See United States ex rel. Hyde v. McGinnis, 429 F.2d 864, 867 (2d Cir. 1970) (in dismissing suit brought by inmate who claimed prison doctor's "faulty judgment" in denying him a particular medication caused plaintiff severe pain, the court noted that while "willful refusal to treat a known ailment" could rise to the level of a §1983 claim, "mere exercise of faulty judgment" did not).  See also Gonzalez v. McGue, 99 Civ. 3455 (DLC), 2001 LEXIS 37 (S.D.N.Y. Jan. 5, 2001) (summary judgment appropriate when doctor failed to perform a biopsy on potentially cancerous patient because he did not believe plaintiff had cancer); Irby v. Frisnia, 119 F. Supp. 2d 130 (N.D.N.Y. 2000) (summary judgment granted against plaintiff's deliberate indifference claim where doctor's misdiagnosis of injury was based on incorrect assessment of plaintiff's condition).

However, Mr. Hart has not produced evidence that would support this claim against Dr. Pillai.  For example, plaintiff has not produced an expert witness who could confirm that a doctor similarly situated to Dr. Pillai would have determined, from plaintiff's medical chart, that he had cancer.  Cf. Liscio v. Warren, 901 F.2d 274 (2d Cir. 1990)(summary judgment

inappropriate where plaintiff submitted an affidavit from medical expert that stated defendant had "severely mismanaged" plaintiff's case); Hemmings v. Gorczyk, 134 F.3d 104 (2d Cir. 1998)(plaintiff survived defendant's motion to dismiss where he produced a specialist who described plaintiff's symptoms of a ruptured Achilles tendon as "classic and expressed shock at the prison medical staff's failure to diagnose and treat" his injury).[4]

Furthermore, the facts regarding Dr. Pillai's treatment of plaintiff, stipulated to by the parties, support defendant's assertions that he did not learn of plaintiff's cancerous condition until at least September of 2000, and in fact treated Mr. Hart in accordance with medical standards.[5]  Not only did Dr. Pillai conduct multiple examinations of plaintiff and authorize numerous diagnostic tests, but plaintiff admits that the reason behind at least some of the tests was because "Dr. Pillai hoped to determine the etiology of the patient's chronic GI issues."

---

[4] The Court notes that such expert testimony is not a prerequisite to maintaining a §1983 claim in the face of a defendant's summary judgment motion.  See Hathaway, 37 F.2d at 68.  However, as plaintiff has failed to produce evidence to the contrary, the court will accept as true defendants' expert testimony that Dr. Pillai behaved according to applicable medical standards.  See Ying Jing Gan, 996 F.2d at 522; Wright 132 F.3d at 133.

[5] See Dajani v. Montgomery County, 59 Fed. Appx. 740 (6th Cir. 2003) (unpublished) (on summary judgment court rejected plaintiff's deliberate indifference claim where defendants failed to administer tests that would have revealed plaintiff's colon cancer even though plaintiff experienced abdominal pain, significant weight loss, rectal bleeding, and severe diarrhea).

[Doc. #29 at ¶12; Pl.'s Local Rule 56 Stat. at ¶12].  Moreover, plaintiff admits that the condition with which Mr. Hart was diagnosed – carcinoid cancer – is "very rare" and "one of the most difficult cancers to detect."  [Pl.'s Local Rule 56 Stat. at ¶22].

Instead of producing evidence, plaintiff impermissibly relies solely on conclusory allegations and speculation to support his assertion that a material issue of fact exists concerning Dr. Pillai's knowledge after he examined plaintiff's medical records.  See Ying Jing Gan, 996 F.2d at 532; Western World Ins. Co., 922 at 121; Knight, 804 F.2d at 15 (plaintiff's assertion that defendants possessed actual knowledge of cancellation of plaintiff's prior insurance policy because they were subsidiaries of the same corporation who handled the cancelled claim was insufficient to defeat summary judgment because it was mere "speculation").  See also Muhammad v. Unger, No. 98-CV-0299E(SR), 2002 WL 450010 (W.D.N.Y. Jan. 9, 2002)(summary judgment appropriate when plaintiff offers nothing other than his own allegations that, because defendants did not adhere to requests that plaintiff be sent to a specialist, they must have been deliberately indifferent to his medical needs.) As a result, no material issue of fact exists regarding Dr. Pillai's lack of knowledge of plaintiff's cancer.

Plaintiff makes a second claim that Dr. Pillai exhibited deliberate indifference by delaying surgery when plaintiff was diagnosed with cancer in September of 2000.  See Doc. #30 at 12-13.  However, plaintiff failed to produce evidence that, even if Dr. Pillai knew in September of 2000 that plaintiff had cancer, the two month delay between this discovery and plaintiff's surgery constituted deliberate indifference.

First, despite defendants' expert testimony to the contrary, plaintiff presented no expert opinion that such a delay was outside the boundaries of applicable medical standards.  In the absence of such evidence, a prisoner's deliberate indifference claim will fail.  See Chance, 143 F.3d at 703; see also Edmonds v. Superintendent of Sing Sing Corr. Fac. Charles Greiner, No. 99 Civ. 1681, 2002 WL 368446, at *8 (S.D.N.Y. Mar. 7, 2002) (citing Chatin v. Artuz, 1999 WL 587885, at *2 (S.D.N.Y. Aug. 4, 1999)(quoting Farmer v. Brennan, 511 U.S. at 826 ("with respect to the subjective showing, prison officials are not liable 'if they responded reasonably to a known risk.'")); Reyes v. Turner, No. 93 Civ. 8951, 1996 WL 93728, at *9 (S.D.N.Y. Mar. 5, 1996) ("There is no right to the medical treatment of one's choice if the prescribed treatment is based upon applicable medical standards.") (quoting McCloud v. Delaney, 677 F. Supp. at 232). The only evidence in the record regarding the applicable medical standard – Dr. Blanchette's affidavit and expert opinion -

indicates that Dr. Pillai "met the appropriate standard of
medical care." [Doc. #34, Ex. C].

Second, even assuming that the two month delay between Mr.
Hart's diagnosis and the exploratory laparotomy constituted
deliberate indifference, plaintiff did not present any evidence
indicating that Dr. Pillai was responsible for the delay. In
fact, the evidence in the record stands in stark opposition to
such a claim. See Doc. #34, Attach. A at ¶19 (Cheryl Malcolm,
member of the four person URC responsible for scheduling non-
emergency surgery during the period of August through November
2000, stated that "because the surgery approved was based on the
results of the surgical consult by Dr. Giles, Dr. Pillai would
not have been consulted by the URC concerning the scheduling of
the surgery."); Id., Attach. B at ¶¶18-19.

Finally, plaintiff's reliance on Chance v. Armstrong is
misplaced. In Chance, the Court of Appeals rejected the
defendants' motion to dismiss where plaintiff alleged that
defendants' mistreatment of plaintiff's medical condition was a
product not of sound medical judgment, but of "ulterior motives"
(specifically, monetary incentives). Chance, 143 F.3d at 704.
The Court went on to intimate that if plaintiff was unable to
produce proof of the ulterior motives, than summary judgment
would be appropriate. Id. Because Mr. Hart's evidence of Dr.
Pillai's alleged ulterior motives consists only of Mr. Hart's

suppositions, he has not demonstrated that an issue of fact exists regarding defendant's motivation.

2. The Liability of Dr. Blanchette

Dr. Blanchette was the Clinical Director of the Connecticut Department of Correction during the time covered by this lawsuit. However, respondeat superior is not available to a plaintiff who asserts a 42 U.S.C. §1983 claim. Monell v. New York City of Dep't of Social Services, 436 U.S. 658, 692-695 (1978); Hemmings, 134 F.3d at 108. See also Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989). Instead, plaintiff must show that the supervisor was somehow personally responsible for any harm suffered by plaintiff. Hemmings, 134 F.3d at 109 n.4); see also Hernandez v. Keane, 341 F.3d 137, 144-45 (2d. Cir. 2003) (citing Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by the supervisory official in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.") "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly

24

negligent in supervising subordinates who committed the wrongful
acts, or (5) the defendant exhibited deliberate indifference to
the rights of inmates by failing to act on information indicating
unconstitutional acts were occurring." Colon v. Coughlin, 58
F.3d 865, 873 (2d Cir. 1995).

Mr. Hart has not presented evidence indicating that Dr.
Blanchette engaged in any of the above-described constitutionally
forbidden activities. Plaintiff does not allege that the Dr.
Blanchette's liability rests on his creation of a policy of
unconstitutional activities, nor does he allege that Dr.
Blanchette was grossly negligent. Therefore, any liability must
rest on (1), (2), or (5) above.

It is undisputed that Dr. Blanchette did not treat or
diagnose Mr. Hart, nor was Dr. Blanchette directly responsible
for scheduling treatments or procedures for patients in general.
[Doc. #34, Attach. A at ¶¶6-8, 10]. Although Mr. Hart's medical
records indicate that Dr. Blanchette was notified that plaintiff
was hospitalized in August of 1999, there is no evidence that Dr.
Blanchette had any further knowledge of plaintiff's condition
until after plaintiff was diagnosed with cancer.[6] Therefore,

---

[6]Although there appears to be an unarticulated allegation that
Mr. Hart personally informed Dr. Blanchette that he was
"suffering from severe and agonizing [abdominal] pain" from 1998
through 2000 [Doc. #15 at ¶5], plaintiff failed to produce
evidence or further arguments on summary judgment that Dr.
Blanchette had knowledge of plaintiff's physical maladies apart
from the August 1999 notification.

because plaintiff does not claim that he suffered any constitutional violation at the hands of Dr. Blanchette's subordinates at or around August of 1999, any liability on the part of Dr. Blanchette must rest on his actions after he learned of plaintiff's cancer diagnosis.  See Hernandez, 342 F.3d 137 (Rule 50 judgment as a matter of law was proper for supervisor of prison medical staff where there was no evidence presented that he treated patient, was responsible for scheduling treatments or procedures, or had knowledge that his subordinates were participating in unconstitutional practices.)

However, once again plaintiff failed to provide any evidence indicating that his treatment over that two month period was outside the boundaries of the applicable medical standard. Therefore, because plaintiff failed to show that he was deprived of a constitutional right by one of Dr. Blanchette's subordinates, he has also failed to demonstrate that Dr. Blanchette behaved in a deliberately indifferent manner toward him.


CONCLUSION

For the reasons stated, defendants' Motion for Summary Judgment **[Doc. #28]** is **GRANTED.**

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of

this order.  Failure to object within ten (10) days may preclude appellate review.  See 28 U.S.C. §636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam);  F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport this 12th day of August 2004.

___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE